IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| APRIL D. FARLEY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Comm'r of Social Security, )<br>)<br>Defendant. )<br>) | Case No. 14-2099-CM |

## MEMORANDUM AND ORDER

Plaintiff April D. Farley claims that she became unable to work because of the following health issues: (1) depression; (2) anxiety; (3) panic attacks, and (4) posttraumatic stress disorder ("PTSD"). When she filed her application for social security benefits in March 2010, plaintiff was twenty-five years old and had obtained a general educational development degree, or "GED," but she had little work history. Since 2008, plaintiff has been evaluated on several occasions by nurse practitioners, presenting with symptoms of mental illness. Plaintiff was prescribed many different anti-depression or anti-anxiety drugs over the years. Plaintiff's claim was denied initially, upon reconsideration, and following a hearing, by an administrative law judge ("ALJ"). Plaintiff then filed this action pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq., requesting supplemental security income benefits.

In a decision dated November, 8, 2012, the ALJ found that plaintiff has severe impairments, including anxiety, depression, and panic attacks. That decision stands as the final decision of the Commissioner of Social Security (Doc. 8-1 at 11–21). Plaintiff contends that the ALJ's decision is

flawed because the ALJ's residual functional capacity ("RFC") is not based on substantial evidence in the record and the ALJ failed to sustain the Commissioner's burden at step five. The court disagrees.

## I. Legal Standard

This court applies a two-pronged review to the ALJ's decision: (1) Are the factual findings supported by substantial evidence in the record? (2) Did the ALJ apply the correct legal standards? *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). "Substantial evidence" is a term of art, meaning "more than a mere scintilla" and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hunter v. Astrue*, 321 F. App'x 789, 792 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)). When evaluating whether the standard has been met, the court is limited; it may neither reweigh the evidence nor replace the ALJ's judgment with its own. *Bellamy v. Massanari*, 29 F. App'x 567, 569 (10th Cir. 2002) (citing *Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995)). On the other hand, the court must examine the entire record—including any evidence that may detract from the decision of the ALJ. *Jaramillo v. Massanari*, 21 F. App'x 792, 794 (10th Cir. 2001) (citing *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994)). The party challenging the action bears the burden of establishing that any error prejudiced the party. *St. Anthony v. U.S. Dep't of Health & Human Servs.*, 309 F.3d 680, 691 (10th Cir. 2002).

## II. Analysis

Plaintiff claims that the ALJ's decision is not supported by substantial evidence of the record as a whole. Specifically, plaintiff argues that, while the ALJ gave every opinion in the record "great" weight, one of the medical opinions was inconsistent with the ALJ's final RFC determination. Because this inconsistency was not explicitly addressed by the ALJ in his opinion, plaintiff argues the ALJ's decision cannot be supported by substantial evidence. The court disagrees.

The ALJ's decision is supported by substantial evidence. There are three psychological opinions in the record—occurring on June 23, 2010, March 3, 2011, and April 14, 2011. A different psychologist conducted each evaluation. Plaintiff focuses on the March 3, 2011 evaluation conducted by Dr. Stanley Mintz, which states:

> Ms. Farley would have difficulty interacting well to [sic] co-workers and supervisors due to numerous mental illness symptoms as noted above. She appears able to understand simple and intermediate instructions. Her concentration capacity appears variable. She appears capable of handling her own funds.

(Doc. 8-1 at 320.) The ALJ accurately summarized these findings in his decision. (*Id*. at 19–20.) Plaintiff's primary argument is that the ALJ did not incorporate Dr. Mintz's findings into his ultimate RFC determination. This argument lacks merit. The ALJ concluded plaintiff was limited to "simple, routine (unskilled), low-stress work, working with things more than with people, with occasional interaction with co-workers and the general public." (*Id*. at 17–18.) While the ALJ did not incorporate Dr. Mintz's recommendations in to the RFC verbatim, no conflict exists between the ALJ's RFC determination and Dr. Mintz's findings. Compare "occasional interaction with co-workers and the general public" (*Id*. at 18) with "Ms. Farley would have difficulty interacting well [with] co-workers and supervisors" (*Id*. at 320). Having difficulty interacting with people does not preclude occasional interactions with people; similarly, having occasional interactions with people does not mean those interactions will not be difficult. There is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). Accordingly, plaintiff has not shown the ALJ erred under SSR 96-9p.[1]

---

[1] In her reply brief, plaintiff argues that "[w]here the non-examining, non-treating physician's opinion is not based on the full record of the case and is issued more than a year prior to the ALJ's decision, it does not constitute substantial evidence to support the ALJ's decision." (Doc 13 at 3, n.3 (citing *Frankl v. Shalala*, 47 F.3d 935-38 (8th Cir. 1995).) The problem is that Dr. Mintz's opinion—upon which plaintiff's entire argument relies—was also "issued more than a year prior to the ALJ's decision." (*Id*.)

Plaintiff argues the ALJ did not consider Dr. Mintz's Global Assessment of Functioning ("GAF") finding of 50. As a preliminary matter, GAF scores have no "direct correlation to the severity requirements in our mental disorders listings."[2] *See* 65 C.F.R. 50746-01, 50764–65. Nevertheless, the ALJ did explicitly consider another of plaintiff's GAF scores, which is a more recent score than Dr. Mintz's score—by over a year. This GAF score was 61 and is indicative of some *mild* symptoms. Ultimately, the ALJ's RFC included *moderate* limitations, which is actually indicative of a GAF score between 51 and 60. The court believes that the ALJ considered Dr. Mintz's GAF score and found that plaintiff's evidence fell between the two GAF scores.

Second, plaintiff argues the ALJ did not adequately state why he found some evidence credible and some not. The court is unpersuaded. Plaintiff indicated she is able to clean and do laundry and does not need help doing these things. (Doc. 8-1 at 167.) She states that she is a "shopaholic" and her interests include "basketball and writing"—both of which she does "very well." (*Id*. at 169.) Plaintiff claims that she follows written instructions "pretty good." (*Id*. at 170.) The ALJ specifically observed that plaintiff generally tolerated her depression and anxiety medications from 2009 through 2012. (*Id*. at 19.) These facts support the ALJ's conclusion that plaintiff's statements "concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity." (*Id*. at 18.) *See White v. Barnhart*, 287 F.3d 903, 909–10 (10th Cir. 2001), *as amended on denial of reh'g* (Apr. 5, 2002). The ALJ further supported his credibility finding by discussing a "third party function report" submitted by plaintiff's friend, William Traynor. The ALJ gave that evidence "little weight" because Mr. Traynor's statements were not given under oath and were nothing more than "a repetition of the subjective complaints already testified to

---

[2] The Commissioner points out that the most recent edition (2013) of the Diagnostic and Statistical Manual of Mental Disorders does not include the GAF scale due to its conceptual lack of clarity and questionable psychometrics in routine practice. *See* AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 16 (5th ed. 2013).

and reported by the claimant." (*Id.* at 20.) The ALJ may consider the motivation of and relationship between the claimant and other witnesses in assessing credibility. *See Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).

Finally, plaintiff argues that the vocations identified by the vocational expert ("VE") are inconsistent with the ALJ's RFC finding of simple, routine, low-stress work. The court is unpersuaded. Plaintiff cites *Hackett v. Barnhart*. 395 F.3d 1168, 1176 (10th Cir. 2005). There, the Tenth Circuit reversed and remanded because the ALJ needed to "address the apparent conflict between Plaintiff's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the VE." *Id.* at 1176. The plaintiff's RFC, as found by the ALJ, was consistent with level-two reasoning. *Id.* However, in *Hackett*, the reasoning levels for *both* jobs—identified by the VE and adopted by the ALJ—required level-three reasoning. The court concluded this discrepancy should have been addressed by the ALJ and remanded to allow for that reconciliation. *Id.*

In this case, plaintiff argues that the two jobs—linen room attendant and order filler—conflict with the ALJ's RFC determination. Notably, plaintiff and Ms. Hackett were assessed the same RFC by their ALJs: Both were found to be capable of performing simple, routine tasks. Based on the Dictionary of Occupational Titles ("DOT"), each job in *Hackett* required level-three reasoning; here, linen room attendant (DOT 222.387-030) requires level-three reasoning and order filler (DOT 922.687-058) requires level-two reasoning. DOT, Vols. I at 201; II at 947. Because "order filler" requires only level-two reasoning, the VE and ALJ in this case correctly identified a job that plaintiff could perform given her RFC. And the ALJ was also aware that the VE's testimony must be consistent with the information in the DOT pursuant to SSR 00-4p. Moreover, the DOT provides the maximum requirements for a particular job. *Thongleuth v. Astrue*, No. 10-1101-JWL, 2011 WL

1303374, at *18 (D. Kan. Apr. 4, 2011) ("[A] claimant's reliance on the DOT as a definitive authority on job requirements is misplaced because DOT definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range" (internal quotations omitted)).  Vocational experts are presumptively aware of the maximum requirements for each of the jobs about which they testified; plaintiff made no attempt at the hearing to attack the ALJ's hypothetical to the VE, the VE's subsequent answer to that hypothetical, or the VE's qualifications as an expert.  *See Morphew v. Colvin*, No. 12-1467-JWL, 2014 WL 1373893, at *14 (D. Kan. Apr. 8, 2014); *Beier v. Colvin*, No. 12-1300-CM, 2013 WL 4059180, at *4 (D. Kan. Aug. 12, 2013).

Even if the court were to find an apparent conflict, that conflict (the ALJ's inclusion of a job with a reasoning level inconsistent with the ALJ's RFC assessment) is mitigated because the job of "order filler" has over five times the number of jobs available in Kansas (2,200) than does the job of "linen room attendant" (425).  (Doc. 8-1 at 21.)  The court is also confident that a VE could list more jobs with a level-two reasoning assessment that plaintiff could perform (that has significant numbers in Kansas) in addition to the one already identified by the VE and adopted by the ALJ.  Thus, even assuming the ALJ erred, the court finds that plaintiff has not established she was prejudiced by that purported error.  *See St. Anthony*, 309 F.3d at 691.

### III.   Conclusion

Based on the above analysis, the court affirms the Commissioner's decision because it is supported by substantial evidence in the record.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is affirmed.

Dated this 30th day of December, 2014, at Kansas City, Kansas.

> s/ Carlos Murguia
> **CARLOS MURGUIA**
> **United States District Judge**